IN THE UNITED STATED BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re | Case No. 16-13005 |
| TYEANE HALBERT, | Chapter 7 |
| Debtor. | Hon. Deborah L. Thorne |
| TYEANE HALBERT, | |
| Plaintiff, | Adv. No. 16-00479 |
| v. | |
| JAMES T. DIMAS, in his official capacity as the Secretary of the Illinois Department of Human Services, and STATE OF ILLINOIS, Department Of Human Services, | |
| Defendants. | |

## Memorandum Opinion and Order

### Introduction

This case presents the question of whether or not a debt is in the nature of support when it is owed to a governmental unit based on the overpayment of funds that had been disbursed for the purpose of allowing the Debtor, Ms. Halbert ("Debtor" or "Halbert"), to purchase food in support of herself and her two minor children. Within the 90-day preference period, the Illinois Department of Human Services ("DHS") obtained a payment on just such a debt out of the Debtor's tax refund. The Debtor sued to recover it as a preference.[1] DHS countered that the payment is protected by § 547(c)(7), which insulates *bona fide* transfers or payments made on account of debts that are, among other things, in the nature of support (including assistance provided by a governmental unit) of a given debtor's spouse, former spouse, or child (or that

---

[1] *See* 11 U.S.C. § 522(h), (i).

child's parent). The Debtor urges this court to focus on the fact that the debt owing to the government is a new debt and is separate from the payment of monies to her that gave rise to the debt. The new debt is a return debt for money that should never have been paid in the first place, she argues, and it is not in the nature of support of her children because that debt financially benefits only the government. DHS counters that any such new debt for reimbursement will never directly be in the nature of support of the Debtor's children. A reimbursement debt owed to the government is in the nature of support, it argues, when it is based on or related to actions by the government that had the effect of supporting the Debtor's children. Here, that would include the provisioning of funds allowing the Debtor to purchase food for her household.

For the following reasons, this court concludes that the debt is not in the nature of support of the Debtor's children. A debt owed to a governmental unit for benefits that may have been used to support a given debtor's children does not automatically retain the supportive nature of those benefits. Rather, such a debt is simply a debt owed for the return of benefits that should never have been paid at all. The payment made on the debt, therefore, is avoidable by the Debtor as a preference.

## **Background**[2]

Beginning in 2009, the Debtor applied for and received Supplemental Nutrition Assistance Program ("SNAP")[3] benefits from DHS for herself and her two minor children. The applications required the Debtor to disclose the number of persons in her household, which came to three: herself and her two minor children. From October to December of 2009, the Debtor received payments in the total amount of $1,008. Then, from August of 2010 to January of 2011,

---

[2] The following facts are taken from parties' agreed stipulation of facts for purposes of the summary judgment motions. *See* Pl.'s Mot. Summ. J., Docket No. 20, at 2–4; Def.'s Statement of Stipulated Material Facts, Docket No. 22–2.

[3] Otherwise referred to as "food stamp" benefits.

she received total payments amounting to $2,386. These benefits had been awarded based on a household size of three. Thereafter (in March of 2011), DHS determined that the Debtor had failed to disclose certain income, and, therefore, all of the benefits received had been overpaid, amounting to a total overpayment of $3,394. Payments were made and applied on $1,473 of that amount, leaving $1,921 owing. In 2015, DHS utilized its offset rights to intercept the amount owing for overpayment from Halbert's income tax refund. It received the $1,921 owed to it by Halbert. Halbert is now trying to recover that amount as a preferential transfer.

Both parties have filed motions for summary judgment. DHS asserts that it fits within the preference exception for payments on debts constituting "domestic support obligations."[4] It argues that because the debt is for the overpayment of funds used to support Halbert's children, the debt is "in the nature" of support of those children under § 101(14A). This line of reasoning finds support in several cases considering the issue of government overpayment of benefits that are deemed to be in the nature of support of the debtor's children. Halbert argues that the debt is for the return of value/funds that should never have been paid in the first place, and is, therefore, not "in the nature of support" because the debt owing back from the Debtor to DHS is an independent debt. *That* debt, she argues, is certainly not for the support of her spouse or children, but rather only benefits the government. This line of reasoning primarily finds support in a great many cases considering the issue of overpayments of child or spousal support by one ex-spouse or child's parent to another.

---

[4] *See* 11 U.S.C. § 547(c)(7).

3

## Discussion[5]

***Summary Judgment Standard***

Rule 56 of the Federal Rules of Civil Procedure applies here, as this is an adversary proceeding and both parties have filed motions for summary judgment.[6] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

All relevant and material facts have been stipulated to for the purpose of deciding the only question at issue here: whether the amount paid to DHS by the Treasury Department was a payment on a debt that was in the nature of support under § 101(14A)(B); the answer to this question determines which party is "entitled to judgment as a matter of law."[7] Even on cross-motions for summary judgment with stipulated facts, however, the court still "reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim." *United States v. State Farm Mut. Auto. Ins. Co.*, 1992 WL 229120, at *1 (D. Kan. Sept. 11, 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)). Here, as the *prima facie* preference case is not in dispute, that burden rests on DHS under the substantive law applicable to preference defenses. 11 U.S.C. § 547(g); *Unsecured Creditors Comm. of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc.*, 826 F.3d 388, 393 (7th Cir. 2016).

---

[5] Jurisdiction is statutorily proper under 28 U.S.C. §§ 157(b)(2)(F) & 1334. Actions to recover preferences, which are actions that are created solely by bankruptcy law, do not implicate any constitutional limitations on this court's jurisdiction. *See, e.g., Pantazelos v. Benjamin (In re Pantazelos)*, 543 B.R. 864, 872–73 (Bankr. N.D. Ill. 2016) (citing *Krol v. Key Bank N.A. (In re MCK Millennium Ctr. Parking, LLC)*, 532 B.R. 716, 719–20 (Bankr. N.D. Ill. 2015); *KHI Liquidation Trust v. Wisenbaker Builder Servs. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 905 (Bankr. N.D. Ill. 2012)). Venue is proper pursuant to 28 U.S.C. §§ 1408(1) & 1409(a).

[6] Fed. R. Bankr. P. 7056.

4

*Preference Elements and the Defense in § 547(c)(7)*

The Bankruptcy Code provides: "Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property . . . ." 11 U.S.C. § 547(b). The transfer at issue here is the Treasury Department's payment to DHS of a portion of the Debtor's tax refund for the 2015 tax year on account of SNAP overpayments made by the state agency to the Debtor.[8] This was a transfer of an interest of the Debtor in property, because the right to receive the tax refund was the Debtor's property at the time of the payment from the Treasury Department to DHS.[9]

Further, the transfer of the debtor's property must be "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). Based on the overpayment of benefits, DHS became the Debtor's creditor. *See* 7 C.F.R. § 273.18(a)(1)(i), (2) ("A recipient claim is an amount owed because of: (i) Benefits that are overpaid . . . (2) This claim is a Federal debt . . . ."). DHS was the recipient of the transfer of funds from the Treasury Department out of the Debtor's tax refund. The transfer must then be on account of an antecedent debt, or a debt that arose prior to the transfer. 11 U.S.C. § 547(b)(2). There is no dispute that the debt created by the overpayment of benefits arose prior to the actual transfer.[10] The Debtor was insolvent at the time,[11] the transfer was made

---

[7] Fed. R. Civ. P. 56(a).
[8] *See* 7 U.S.C. § 2022(b)(1); 7 C.F.R. § 273.18(a)(1)(i), (2), (n); 31 C.F.R. § 285.2(b)(1); *Stone v. Hamilton*, 308 F.3d 751, 755–56 (7th Cir. 2002).
[9] The point of the setoff scheme seems to be to permit satisfaction of the State's overpayment debt out of an overpayment-debtor's funds before the funds come into the control of that debtor. *See also Kokoszka v. Belford*, 417 U.S. 642, 647–48 (1974) (tax refund for pre-petition withholding is property of the estate).
[10] The debt was created in early 2011; the transfer was made on March 11, 2016. *See* Pl.'s Mot. Summ. J., Docket No. 20, at 3–4.
[11] 11 U.S.C. § 547(b)(3), (f).

5

within 90 days of the petition,[12] and it allowed DHS to receive more than it would have in an ordinary chapter 7 distribution.[13]

Thus, the transfer meets the *prima facie* elements of a preference; the real question here, however, is whether it fits within one of the exceptions provided for in § 547(c). Specifically, a transfer that is otherwise a preference may not be avoided "to the extent such transfer was a bona fide payment of a debt for a domestic support obligation." 11 U.S.C. § 547(c)(7). The transfer from the Treasury Department out of the Debtor's property was undoubtedly a *bona fide* payment of a debt, namely the debt owing to DHS for overpayment of benefits, but is that debt owed to DHS for overpayment also a "domestic support obligation"?

### *Domestic Support Obligation*

In formulating its answer, this court notes that it "begin[s] with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)). Statutes, however, must be construed as a whole, and their provisions should not be read in isolation. *King v. Burwell*, 135 S. Ct. 2480, 2489, 192 L. Ed. 2d 483 (2015); *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010).

Domestic support obligation is defined in the Bankruptcy Code (the "Code"). For a debt to constitute a domestic support obligation, it must first be owed to a "spouse, former spouse . . . or a governmental unit." 11 U.S.C. § 101(14A)(A). There is no dispute that DHS is a governmental unit and that the debt was owed to DHS. The debt must further be established or created by any number of orders, decrees, or agreements incident to any number of family court

---

[12] *Id.* § 547(b)(4)(A).
[13] *See id.* § 547(b)(5).

6

proceedings or by "a determination made in accordance with applicable nonbankruptcy law by a governmental unit." *Id.* § 101(14A)(C). Both parties have stipulated that DHS's calculation of overpayment was the relevant determination. Aside from 14A(D), which is not applicable here,[14] that leaves the requirement that the debt be "in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated." *Id.* § 101(14A)(B). The parties disagree solely as to whether or not the debt owed to DHS for overpayment is in the nature of support.

To be excepted from preference liability under § 547(c)(7), the debt on which the preferential payment was made must have been one for a "domestic support obligation," which here pertinently means the debt must have been in the nature of support. 11 U.S.C. §§ 101(14A)(B), 547(c). The term "debt" means "liability on a claim." *Id.* § 101(12). A claim, in turn, means pertinently "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated . . . ." *Id.* § 101(5)(A).

Here, DHS's right to payment from the Debtor stemmed from DHS's overpayment of benefits to the Debtor from 2009–2011. 7 U.S.C. § 2022(a)(1), (b)(1)(C), (d); 7 C.F.R. § 273.18(a)(1)–(2). The Debtor's liability on this claim created the *debt* it owed to DHS. The question, therefore, seems to become: is a debt in the nature of support (including assistance provided by a governmental unit) of a given debtor's children when it is owed for money mistakenly overpaid that had been provided to that debtor in part to be used to feed that debtor's children?

---

[14] The debt has not been assigned to a nongovernmental entity.

7

*The Nature of Support*

Determining whether a given debt is in the nature of support is a question of federal bankruptcy law. *Trentadue v. Gay (In re Trentadue)*, 837 F.3d 743, 748 (7th Cir. 2016). Nowhere in the Code is "support" defined; this determination is a "fact-sensitive inquiry" and must be made based on the totality of the circumstances present in a given case, looking at the substance of the obligation owed and not its form. *See Trentadue*, 837 F.3d at 748 (quoting *In re Goin*, 808 F.2d 1391, 1392 (10th Cir. 1987)); *In re Alewelt*, 520 B.R. 704, 711 (Bankr. C.D. Ill. 2014).[15] The 2005 BAPCPA amendments "did not change the standard for whether a debt or obligation is in the nature of support." *Rivera v. Orange Cty. Prob. Dep't (In re Rivera)*, 832 F.3d 1103, 1111 (9th Cir. 2016) (quoting *Stover v. Phlegley (In re Phlegley)*, 443 B.R. 154, 157 (B.A.P. 8th Cir. 2011)). The amendments did, however, resolve any doubt as to whether a governmental unit could constitute the permissible payee of a domestic support obligation in certain contexts. *Id.* at 1106–07, 1111. Several cases have considered the issue in this specific context, to which this court now turns.

*Cases Deciding an Overpayment Debt is in the Nature of Support*

The first of these cases concerned whether a given debtor's obligation to a governmental unit for overpayments of food stamp benefits was a domestic support obligation excepted from discharge under § 523(a)(5) (which uses the same definition found in § 101(14A)).[16] In holding that it was excepted, the court noted that, like here, the food stamps, at the time of issuance, were allocated to the recipient based in part "on the presence of Ratliff's three children within her household." *Ratliff*, 390 B.R. at 615 (citing 7 C.F.R. §§ 273.1(a), 273.1(b)(1), 273.10, 273.12).

---

[15] *See also Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9–10 (2d Cir. 1981) (citing *Pepper v. Litton*, 308 U.S. 295, 305–06 (1939); *Wetmore v. Markoe*, 196 U.S. 68, 72–77 (1904)).

[16] *Wisconsin Dep't of Workforce Dev. v. Ratliff (In re Ratliff)*, 390 B.R. 607 (E.D. Wis. 2008).

Observing that the stamps allowed Ratliff to obtain food for her children, and that an obligation is in the nature of support where it "serves to maintain daily necessities such as *food*, housing and transportation," the court concluded that the overpayment was "in the nature of support" of Ratliff's children. *Ratliff*, 390 B.R. at 615 (quoting *In re Gianakas*, 917 F.2d 759, 763 (3d Cir. 1990)) (internal quotation marks omitted) (emphasis added). The court appears to assume, perhaps based on a causal relationship between the debt owing back from Ratliff and the initial overpayment's supportive character, that the debt for overpayment is then itself in the nature of support based on the court's characterization of the initial obligation owing from the state that had been overpaid.

The court in *Wisconsin v. Schauer (In re Schauer)*[17] reached the same conclusion. That case concerned an overpayment of child care subsidies to the debtor and a complaint filed by the state for the non-dischargeability of the debt owed by the debtor for that overpayment. *Schauer*, 391 B.R. at 431–32. Holding that the debt was non-dischargeable under § 523(a)(5), the court emphasized that "Congress clearly intended to broaden the types of debts that are not subject to discharge." *Schauer*, 391 B.R. at 434. The court said further that the new definition found in § 101(14A) "encompasses *all debts* to a governmental unit *related to support*, such as the child care subsidy at issue here." *Id.* (emphasis added).

Most recently, a court had occasion to consider whether a debt for overpayment of child care subsidies was a domestic support obligation for purposes of § 507(a)(1), which references the same definition found in § 101(14A).[18] Again holding that the debt for overpayment fit the definition in § 101(14A), the court relied on the nature of the subsidy that had been paid to the debtor, noting that it represented payment for the debtor's "actual, reasonable and necessary"

---

[17] 391 B.R. 430 (Bankr. E.D. Wis. 2008).
[18] *In re Etnire*, 568 B.R. 80 (Bankr. C.D. Ill. 2017).

9

child care expenses. *Etnire*, 568 B.R. at 84. The court was thus on "firm ground" when it held that the debt owing back for overpayment of those same subsidies was "in the nature of support." *Id.* at 85.

### *Cases Deciding an Overpayment Debt is not in the Nature of Support*

Standing in contrast to these cases are those decisions considering the overpayment of spousal or child support by one ex-spouse to another or by one child's parent to another, a different scenario from that presented in the case at bar. In one case, for example, a creditor obtained a money judgment against the debtor for funds that he had paid to the debtor for child support when it was later determined by the state court that he had never been the biological father of the child on whose behalf the payments had been made. *In re Vanhook*, 426 B.R. 296, 301 (Bankr. N.D. Ill. 2010). The bankruptcy court held that this debt was not in the nature of support for purposes of determining priority status under § 507(a)(1)(A):[19]

> The Court finds that the judgment debt is not in the true nature of child support. Rather, it is merely a money judgment awarded to the Creditor for his wrongful payment of child support to the Debtor because it was determined that he was not the father of the children. *The ensuing debt owed to the Creditor as the result of the wrongfully paid child support should not retain the same character as when the Creditor originally and mistakenly paid the monies to the Debtor.*

*Vanhook*, 426 B.R. at 301 (emphasis added). To the same effect is *Lankford v. Drinkard (In re Drinkard)*,[20] wherein the court held that an obligation owed to the debtor's ex-husband for that husband's overpayment of child support was not in the nature of support for the purposes of § 523(a)(5); the obligation, rather, was "simply a money judgment given to reimburse Mr. Lankford for overpayment of child support." *Drinkard*, 245 B.R. at 94. Another bankruptcy court held likewise with respect to an overpayment of child support, noting that the "creditor merely

---

[19] This section of the Code references the same definition of a domestic support obligation found in § 101(14A).
[20] 245 B.R. 91 (Bankr. N.D. Tex. 2000).

10

argues in a conclusory fashion that the overpayment debt should *retain the same character* as when he originally paid the sums to the debtor." *In re Lutzke*, 223 B.R. 552, 554 (Bankr. D. Or. 1998) (emphasis added). The creditor made no showing that he himself or any children in his custody were in need of "support" when the overpayments were made. *Id.*

The bankruptcy court in *Taylor v. Taylor (In re Taylor)*[21] expressly distinguished *Ratliff*,[22] albeit not in the context of a governmental creditor. That case concerned an overpayment of spousal support to the debtor. In holding that the debt owing for overpayment was not a domestic support obligation, the court rejected the reasoning in *Ratliff* that the debt owed for overpayment of support "necessarily retained [its] character as [a support obligation] based on the character of the initial debt."[23]

Cases holding to the contrary in that context seem to do so not on the theory that the ensuing debt owing back to the creditor in the bankruptcy case retains the character of the original overpaid obligation, but rather on the theory that facts and circumstances are present at the time of the incurrence of the new debt that support the conclusion that that new debt is really in the nature of support of the creditor or the parties' child(ren). For example, in *Norbut v. Norbut (In re Norbut)*,[24] the court found that the debtor's debt for overpayment of spousal support was of a supportive nature, but it emphasized the fact that the debt owed to the plaintiff-creditor ex-spouse was in the nature of support of that spouse because of factual findings that the plaintiff-creditor had been living a "frugal, modest existence" and that the overpaid funds were

---

[21] 455 B.R. 799 (Bankr. D.N.M. 2011), *aff'd*, 478 B.R. 419 (B.A.P. 10th Cir. 2012), *aff'd*, 737 F.3d 670 (10th Cir. 2013).
[22] *See supra* note 16.
[23] *Taylor*, 455 B.R. at 807.
[24] 387 B.R. 199 (Bankr. S.D. Ohio 2008).

11

necessary for the plaintiff's "support" and "sustenance." *Norbut*, 387 B.R. at 208. Another case holding likewise is *In re Knott*.[25] There, the court stated pertinently:

> The instant case presents a somewhat unusual set of facts in which the repayment obligation arises from excess child support paid at a *time when Meadors was, in addition to paying child support to Debtor, providing at least half the child's support while she (the child) was in his custody*; and from child support improperly withheld via the IDO at a time *when Meadors had full custody of the child*. Therefore, *the repayment obligation to Meadors* may properly be characterized as intended for and in the nature of support for the child.

*Knott*, 482 B.R. at 856 (emphasis added). While one court appears to hold more broadly (*i.e.*, the debt retained its supportive nature based on the character of the initial obligation),[26] the court there still notes peculiar facts such as the fact that the plaintiff-creditor was the custodial parent of the child when the overpayments were made, thus establishing an independent supportive character for the debt owing back from the debtor.[27]

### *An Overpayment Debt Owed back to the Government is not in the Nature of Support*

Only one bankruptcy court has sided with the spousal/child support overpayment decisions in the context of a debt owed to the government for overpayment of food stamp benefits.[28] The court there noted that a debt, even if held by a "governmental unit," must still be "for the support of 'such spouse, former spouse, or child of the debtor or such child's parent.'" *Hickey*, 473 B.R. at 364. If the government is owed a debt based on its overpayment of funds to the debtor, that debt is not for the support of the debtor's spouse, former spouse, or child (or such

---

[25] 482 B.R. 852 (Bankr. N.D. Ga. 2012).
[26] *Curl v. Baker (In re Baker)*, 294 B.R. 281, 288 (Bankr. N.D. Ohio 2002) ("Thus, for the above reasons, the intent of § 523(a)(5) clearly aligns itself much more closely with the position that, as the phrase is used in § 523(a)(5), an obligation is "for ... support of such ... child" whenever there is any legal duty to pay such an obligation. . . . Therefore, in this case, since the overpayments at issue were made pursuant to the Parties' original order for child support, the Court must find that the Plaintiff was under a legal duty to make such payments.").
[27] *Id.* at 283–84, 287 ("In addition, even if the 'need' of the creditor-parent were a factor, the Plaintiff in this case apparently has such a 'need' given that he, unlike the situation in both *In re Lutzke* and *In re Drinkard*, is the residential parent of the Parties' minor child.").
[28] *State v. Hickey (In re Hickey)*, 473 B.R. 361 (Bankr. D. Or. 2012).

12

child's parent). *Id.* "Rather, it is a debt for the return of a benefit paid to the Debtor which should not have been paid in the first place." *Id.* at 364–65; *see also* 2 *Collier on Bankruptcy* ¶ 101.14A, at 96.1 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017); 4 *Collier on Bankruptcy* ¶ 523.11[5], at 84–84.1 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017); Henry J. Sommer & Margaret Dee McGarity, *Collier Family Law and the Bankruptcy Code* ¶ 6.03[4][b], at 27 (2017). This court agrees. There is no reason to deviate from the reasoning of the cases considering this issue in the parental/spousal support scenario merely because the debt is owed to a governmental unit. Moreover, as noted by one respected treatise, "virtually any incorrect payment by the government to a household is in most cases used to provide support to the household." 2 *Collier on Bankruptcy* ¶ 101.14A, at 96.1. Is a debt owed to the government based on an incorrect tax refund, or a debt owed to a public housing authority on a judgment for rent, to be considered "in the nature of support"? *Id.* If the debt owing back automatically retains the supportive character of the value given by the creditor, the answer would seem to be yes. This court declines to read the statute to allow such a result.

This court, however, must interpret the statute so as to "give effect to all of the statutory language." *United States v. Johnson*, 152 F.3d 618, 623–24 (7th Cir. 1998). If governmental units may be owed support debts under § 101(14A) for the assistance that they provide, then what might some of those debts be? As the court in *Hickey* noted, such a debt would normally be a debt, originally supportive in nature when incurred, that had been assigned to a governmental unit. *Hickey*, 473 B.R. at 364–65. It provided illustrations of such debts. *Id.* at 365 n.2. For example, a recipient of state aid under Oregon's Temporary Assistance for Needy Families program

> must assign to the state any rights to support that may be due from any other
> person to a family member for whom the applicant is applying for or receiving

13

> aid. If aid is paid and received for the support of a child, the rights to child support that any person may have for the child are deemed to have been assigned by operation of law to the state.

*Hickey*, 473 B.R. at 365 n.2; Or. Rev. Stat. Ann. § 412.024 (West 2017). Another instance might be where the state becomes assignee of or subrogated to any right to support held by a child when the state takes custody of the child. *Hickey*, 473 B.R. at 365 n.2; Or. Rev. Stat. Ann. § 418.032 (West 2017). Similarly, in Illinois, persons receiving aid under the Illinois Public Aid Code are deemed to have assigned any support rights they have to the state. 305 Ill. Comp. Stat. 5/10-1; *In re Marriage of Paredes*, 863 N.E.2d 788, 791–92 (Ill. App. Ct. 2007); *Dep't of Pub. Aid ex rel. Peavy v. Peavy*, 716 N.E.2d 1261, 1265 (Ill. App. Ct. 1999).

DHS contends, however, that the types of support debts that are assigned to a governmental unit will never be in the nature of support of a given debtor's spouse, ex-spouse, or children (or such children's parent), and, therefore, that these types of debts do not really give effect to the language of the statute. Speaking of the assigned debts discussed in *In re Hickey*, DHS principally argues:

> [W]hile the court tried to identify hypothetical debts recoverable by a governmental unit that would qualify as domestic support obligations, the types of debts listed in a footnote would fail its own test, as they are still debts that are owed as form of reimbursement to a governmental unit. Taking the example the court used for funds received under TANF, while the payments to the former spouse or child would be a domestic support obligation, *upon assignment the payments become a debt to the government and lose the characteristic of "need" and would no longer meet the court's definition of being supportive in nature.*[29]

Based on this argument, DHS urges this court not to follow the reasoning in *Hickey*.

This court does not agree with DHS's contention. A debt does not necessarily lose the character it enjoyed at its incurrence when it is assigned. As the Supreme Court noted when dealing with priority wage claims:

---

[29] Def.'s Resp., Docket No. 24, at 3–4 (emphasis added).

14

> These debts were exactly within the description of those to which the bankruptcy act gives priority of payment, and they did not cease to be within that description by their assignment to another. *The character of the debts was fixed when they were incurred, and could not be changed by an assignment.*

*Shropshire, Woodliff & Co. v. Bush*, 204 U.S. 186, 189 (1907) (emphasis added);[30] *see also generally New Falls Corp. v. Boyajian (In re Boyajian)*, 367 B.R. 138, 144–46 (B.A.P. 9th Cir. 2007), *aff'd*, 564 F.3d 1088 (9th Cir. 2009); *Enron v. Springfield Associates, LLC (In re Enron Corp.)*, 379 B.R. 425, 435 (S.D.N.Y. 2007).

In addition to the assigned debts noted by the court in *Hickey*, the Ninth Circuit Court of Appeals also recently enumerated certain debts owed to governmental units that would qualify under the definition found in § 101(14A). Debts owed for "support provided in foster care, wardship, and residential treatment centers," for instance, could qualify as domestic support obligations owed to the government. *Rivera v. Orange Cty. Prob. Dep't (In re Rivera)*, 832 F.3d 1103, 1106 (9th Cir. 2016).[31] A debt for expenses the government incurred acting for the benefit of a child in divorce or custody proceedings might pass muster as well. *Id.* at 1106–07.[32]

Thus, it can be seen that there are many debts potentially owed to governmental units, other than the one at issue here, that may qualify as domestic support obligations under §

---

[30] A bankruptcy provision may, however, specifically disallow assignees or subrogees from asserting a claim, no matter its underlying nature. *See, e.g.*, 11 U.S.C. § 101(14A)(D) (preventing nongovernmental assignees, except for certain persons assigned the debt solely for collection purposes, from holding a "domestic support obligation" debt in bankruptcy); *id.* § 507(d) (preventing subrogees from asserting certain priority claims). Not even governmental assignees could assert the old domestic support obligation preference defense. *See* 11 U.S.C. § 547(c)(7) (2000) ("but not to the extent that such debt – (A) is assigned to another entity, voluntarily, by operation of law, or otherwise . . . ."); Alan N. Resnick et al., *2005 Collier Pamphlet Edition Part 1: Bankruptcy Code* 552 (2004).

[31] Perhaps the supportive nature of these debts could be explained by a substitutionary theory accomplishing the functional equivalent of an assignment of the child's support rights to the government where the child is out of the custody of the child's parents and the state provides the child's support.

[32] At least where such expenses are incurred in collecting on the support obligation owed to the child by the debtor, it might be said that this type of debt is effectively assimilated into and becomes part of the "underlying obligation" owed by the debtor to the child for support. *See Dekalb County Div. of Family & Children Servs. v. Platter (In re Platter)*, 140 F.3d 676, 682 (7th Cir. 1998); *Matter of Rios*, 901 F.2d 71, 72 (7th Cir. 1990).

101(14A). What Congress has made clear through the new definition in § 101(14A) is that a debt does not lose its status as a "domestic support obligation" merely because it is owed to a governmental unit, as some courts had previously held;[33] in other words, the new definition is largely clarificatory. *Rivera*, 832 F.3d at 1106; *Hickey*, 473 B.R. at 364.[34] The debt owed to the government must still be for the support of the debtor's child, spouse, former spouse, or such child's parent. *Id.* In this way,

> BAPCPA carries forward the core purpose of the DSO exception by ensuring that bankruptcy will not hinder the enforcement of *family obligations* in circumstances in which the government's family support infrastructure—the network of foster systems, aid agencies, family courts, and the like—has *intervened* on a spouse's, former spouse's, or child's behalf.

*Rivera*, 832 F.3d at 1107 (emphasis added).

---

[33] *See Rivera*, 832 F.3d at 1106 (citing and discussing cases on both sides of the issue as to whether or not a debt owed to a governmental unit for providing wardship, foster care, or certain court-appointed personnel for the debtor's child was nondischargeable as a domestic support obligation under the pre-BAPCPA Bankruptcy Code).

[34] The idea that Congress may have acted to clarify and settle the law is not unprecedented in this area. In 1904, the Supreme Court considered a 1903 amendment to the 1898 Bankruptcy Act. *Wetmore v. Markoe*, 196 U.S. 68, 76 (1904). That amendment provided that obligations arising from decrees for the support of a given debtor's spouse or minor children were not dischargeable in bankruptcy. *Id.* But most courts, including the Supreme Court, had already held by 1903 that such obligations were not dischargeable, as they were not considered debts provable in bankruptcy capable of being discharged. *Id.* at 73, 76; *Audubon v. Shufeldt*, 181 U.S. 575, 577 (1901). Thus, the Court noted that the 1903 amendment may "have been passed with a view to settling the law upon this subject," the amendment being "merely declaratory of the true meaning and sense of the statute." *Wetmore*, 196 U.S. at 76–77; *accord Rivera*, 832 F.3d at 1106 ("This definition . . . remove[d] any doubt . . . ."); *Hickey*, 473 B.R. at 364 ("The new definition of domestic support obligation makes it clear that the debt can be one held by a "'governmental unit' . . . ."). This court notes that, as far as the old preference defense provision was altered by § 101(14A), the change wrought in 2005 was more than merely declaratory, as the old preference defense provision, unlike the old nondischargeability provision (the new version of which was considered in *Hickey* and *Rivera*), prohibited *any* assignees from making use of it. 11 U.S.C. § 547(c)(7) (2000); *id.* § 523(a)(5)(A); Alan N. Resnick et al., *2005 Collier Pamphlet Edition Part 1: Bankruptcy Code* 552 (2004); *id.* at 441. The new definition in § 101(14A) at issue in this case, however, applies equally to both the nondischargeability section and the preference section, so this court considers it proper, in interpreting § 101(14A), to examine the definition in light of both sections.

16

## Conclusion

Therefore, this court concludes that the debt owed to DHS for reimbursement of the funds it paid to the Debtor is not in the nature of support of the Debtor's children solely on the basis that the use of the overpaid funds had been limited to the purchase of food and had been disbursed based on a household size calculation that included two minor children. The debt owed to DHS is merely a debt to the government for the return of benefits that should never have been paid to the Debtor at all, and that debt does not automatically retain any supportive nature that the benefits may have had. For that reason, these stipulated facts do not show that the transfer DHS received out of Halbert's tax refund was "a bona fide payment of a debt for a domestic support obligation." Accordingly, the defendant's motion for summary judgment is hereby DENIED. The plaintiff's motion for summary judgment is hereby GRANTED. The payment made to DHS from the Debtor's tax refund was a preference under § 547(b), with no defense under § 547(c) having been proven. For that reason, DHS is hereby ORDERED, pursuant to § 550(a)(1), to pay the sum of $1,921 to the bankruptcy estate of the Debtor.

Dated: 11/16/2017                                Enter: _____
                                                 Hon. Deborah L. Thorne
                                                 United States Bankruptcy Judge